UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DERO ROOFING, LLC,

    Plaintiff,

v.                                                    Case No.:   2:21-cv-688-SPC-KCD

TRITON, INC., and BASF
CORPORATION,

    Defendants.
_____/

## OPINION AND ORDER[1]

Before the Court are Defendants Triton, Inc. and BASF Corporation's Motions to Dismiss (Docs. 68; 69). Plaintiff Dero Roofing, LLC responded (Doc. 70). The Court grants and denies the Motions in part.

## BACKGROUND

This is a products liability case. Dero is a roofing contractor. It repaired hurricane damage to the roofs on two condominium buildings ("Condos"). After Dero made the repairs, Triton trained Dero to become a certified applicator of Triton's products. Dero returned to the Condos and applied two products—TritoCryl and TritoFlex—to the roofs using a spray machine ("Sprayer").

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them. The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

Defendants manufactured and distributed TritoCryl, TritoFlex, and the Sprayer.

When applying the products, Dero had issues with the Sprayer. Also, the TritoFlex didn't perform well. Finally, after Dero applied the products, the TritoCryl streaked down the roof tiles onto "the exterior and interior of the [Condos], including penetration of the residents' screens, gutters, and other related areas." (Doc. 67 at 4-5). The Condos held Dero responsible. So it got assignments of the Condos' claims and brought this action against Defendants.

## LEGAL STANDARD

A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A facially plausible claim allows a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Courts accept all well-pled allegations as true and view them most favorably to plaintiff. *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017). Sitting in diversity, the Court applies federal procedural and Florida substantive law. *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017).

## DISCUSSION

The Court takes the discussion in five parts. First, it clarifies the scope of the suit. Second, the Court denies the Motions to the extent that they rely on shotgun pleading grounds. Third, it discusses some claims which were already addressed by previous Orders (Docs. 50; 66). Fourth, the Court tackles the economic loss rule. And fifth, it explains why no amendment is warranted.

**A. Scope**

To start, Dero's status as Plaintiff must be oriented. Triton is correct that Dero sues as an assignee of the Condos. (Doc. 67 at 1, 3-4). Of course, "assignee stands in the shoes of the assignor." *United Water Restoration Grp. v. State Farm Fla. Ins.*, 173 So.3d 1025, 1027 (Fla. Dist. Ct. App. 2015). So as the Court understands it, Dero brings claims as assignee of the Condos. Dero does not allege any of its own direct claims against Defendants.

Without explanation, Dero says Triton is mistaken because it has its own causes of action, "maybe even hundreds of them," against Triton. (Doc. 70 at 4). But Dero is the one who apparently misunderstands its own pleading. Let's leave aside the fact nothing could be construed as Dero bringing hundreds of claims against Triton. Once more, the claims are alleged by Dero as the Condos' assignee. *United Fire & Cas. Co. v. Progressive Express Ins.*, No. 6:19-cv-1049-Orl-41EJK, 2019 WL 13067269, at *2 (M.D. Fla. Nov. 20, 2019) (relying on pleadings that only reflected plaintiff's assignee status). Even if

3

there were not those pleading issues, the Complaint contains no allegations which could circumvent the economic loss doctrine (detailed below) as to Dero. Specifically, the Condos plausibly had other property damaged—not Dero. *E.g.*, *Pycsa Pan., S.A., v. Tensar Each Techs., Inc.*, 625 F. Supp. 2d 1198, 1247-48 (S.D. Fla. 2008) (collecting cases) ("In Florida, a pre-requisite to claiming damage to other property is that the plaintiff must be the owner of the other damaged property.").

So this case will proceed—as alleged—with Dero as assignee of the Condos.

**B. Shotgun Pleading**

With the scope settled, the Court handles the pleadings. The Complaint—while still not "a model of clarity"—is good enough from a technical standpoint. *See Dressler v. Equifax, Inc.*, 805 F. App'x 968, 972 (11th Cir. 2020). In part, BASF's argument in this regard relies on the Sprayer allegations. As discussed in Sections C and D, those theories are dismissed. So there is no need to analyze whether those allegations were made in a shotgun way. For Counts 1 and 2 (BASF's remaining challenged claims), the Complaint clarifies its theories and who they are against sufficiently to allow Defendants a chance to understand the claims and their basis. So the Motions are denied to the extent that they contend the Complaint is a shotgun pleading.

4

## C. Addressed Counts

Earlier, the Court dismissed Counts 1, 2, 3, and 5 for failure to state a claim. As Triton explains, Dero did not fix the issues on Counts 3 and 5. So the Court again dismisses. After amending and considering the ruling in Section D, Counts 1 and 2 solved the problems identified in the last Order. Also, Dero realleges claims related to the Sprayer. But Judge Dudek denied its motion to amend and include such theories. So those claims are dismissed too.

Count 5 is for failure to warn. Dero realleges a deficient claim. Specifically, it still does not plead the content of the relevant warnings. Nor does it explain how the warnings were inadequate. An Order explained that is insufficient. (Doc. 50 at 10-11). So dismissal is proper. *Dye v. Covidien LP*, 470 F. Supp. 3d 1329, 1338 (S.D. Fla. 2020) ("Plaintiff must also plead the content of the warning label or otherwise describe the manner in which the warning was inadequate." (cleaned up)); *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 609 (11th Cir. 2008); *Wright v. Howmedica Osteosis Corp.*, 741 F. App'x 624, 626 (11th Cir. 2018).

What's more, as Triton contends, there is no contention the Condos or Dero read the warnings. This is fatal to the cause of action. *E.g.*, *Pinchinat v. Graco Children's Prods., Inc.*, 390 F. Supp. 2d 1141, 1148 (M.D. Fla. 2005) ("Under Florida law, plaintiff's failure to read the warning label extinguishes

5

proximate cause in a failure to warn claim."); *Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1225 (M.D. Fla. 2009). Without explanation, the Complaint says, "descriptive labels and material safety data sheets . . . were relied upon and utilized by Dero." (Doc. 67 at 23). But that does not clarify whether the Condos, Dero, or its employees actually read all the warnings. Worse yet, the Complaint never identifies what the safety data sheets even are. Because it does not allege all the warnings were read, it is impossible to conclude Defendants breached a duty to warn.

Count 3 is for fraudulent misrepresentation. Again, Dero failed to plead this claim with the required specificity. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). As explained, this allegation demands "heightened pleading." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). And once more, Dero doesn't specify the "who, what, where, when, and how" of the alleged fraud. *E.g.*, *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1327 (11th Cir. 2009) (cleaned up). Simply put, Dero's conclusory, boilerplate allegations that Triton made "affirmative representations and omissions" won't cut it. *See* (Doc. 67 at 17-18).

As for Counts 1 and 2, the problem of comingling allegations and Defendants is no longer dispositive. The Complaint only attempts to hold BASF liable for TritoCryl—which Dero also concedes in the briefing. And as

6

discussed in Section D, only narrow claims related to TritoCryl will proceed. So the Court denies the Motions to the extent that they seek dismissal of Counts 1 and 2 for comingling.

Finally, Dero now attempts to allege claims related to the Sprayer. But it did so after the amendment deadline and following Judge Dudek specifically denying leave. So all theories as they relate to the Sprayer are dismissed.[2]

## D. Economic Loss Doctrine

Next, Defendants seek to dismiss the remaining claims under the economic loss doctrine.[3] The economic loss rule is judge-made, and it was intended to reign in "attempts to apply tort remedies to traditional contract law damages." *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 401 (Fla. 2013). Stated clearly, the doctrine "prohibits tort recovery when a product damages itself, causing economic loss, but does not cause personal injury or damage to any property other than itself." *Casa Clara Condo. Ass'n v. Charley Toppino and Sons, Inc.*, 620 So. 2d 1244, 1246 (Fla. Dist. Ct. App.

---

[2] Even if they were not dismissed for this reason, the Sprayer claims are barred by the economic loss doctrine (as described in Section D).

[3] BASF joins and incorporates Triton's argument on this issue. Typically, the Court prefers avoiding the wholescale adoption of detailed legal argument from other briefing. Yet it does not appear BASF is attempting to skirt the Court's page limit. So the Court considers BASF as having made this argument too. *See Allen Sys. Grp. v. Avon Prods., Inc.*, No. 2:16-cv-121-FtM-38MRM, 2017 WL 6947451, at *3 (M.D. Fla. May 25, 2017).

1993), *receded from on other grounds by Tiara,* 110 So. 3d 399. Two parts of that definition are often litigated—economic loss and other property.

First, economic losses equate to "disappointed economic expectations, which are protected by contract law, rather than tort law." *Casa,* 620 So. 2d at 1246 (cleaned up). Those might include things like "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits." *Id.* (citation omitted).

Second, other property is sometimes tough to pin down. *Southland Constr., Inc. v. Richeson Corp.*, 642 So. 2d 5, 9 (Fla. Dist. Ct. App. 1994). When a defective product is "an integral or component part" of a larger item, then damage to the larger item "caused by this component part was not damage to separate property." *Am. Universal Ins. v. Gen. Motors Corp.*, 578 So. 2d 451, 453 (Fla. Dist. Ct. App. 1991). As the rationale flows, a component becomes part of the purchased product, so they are one. If nothing else was damaged, therefore, the economic loss rule applies because there was no damage to other property. 41A Fla. Jur. 2d *Products Liability* § 87 (2d ed. Sept. 2022 update) ("Where a part of a product is an integral or component part of the product, damage to the product caused by the component part is not damage to separate property, that is, it is not damage to other property.").

To qualify as other property, there must be damage to something "unrelated and unconnected to the product sold." *Jarmco, Inc. v. Polygard,*

*Inc.*, 668 So. 2d 300, 303 (Fla. Dist. Ct. App. 1996). In other words, "there is no privity between the owner of the property damaged and the distribution chain for the product causing the damage." *Id.* And, crucially, "The character of the loss determines the appropriate remedies." *Casa*, 620 So. 2d at 1247.[4] That's lawyer-speak for saying "one must look to the product purchased by the plaintiff, not the product sold by the defendant." *Id.*

The doctrine's application here is both clear and unclear. This analysis starts with what's easy before turning to the trickier matter.

Dero's theories as they relate to roof damage obviously cannot stand because they are barred by the economic loss doctrine. For the same reason, its causes of action concerning TritoFlex and the Sprayer fall short. Dero applied TritoFlex and TritoCryl to the roofs. They were component parts of each respective roof. And notably, the Condos presumably paid for completed roofs, not individual parts that could later make up a roof. In short, Dero cannot bring a products liability action for damages to the roofs because those theories are barred by the economic loss doctrine. *E.g.*, *Turbomeca, S.A. v. French Aircraft Agency, Inc.*, 913 So.2d 714, 717 (Fla. Dist. Ct. App. 2005) ("Courts have refused to bifurcate products into parts where a component part

---

[4] This principle survived *Tiara*. *Saft Am., Inc. v. Jabil Cir. (Guangzhou), Ltd.*, No. 3:18-cv-446-J-32JBT, 2019 WL 4600401, at *3 & n.4 (M.D. Fla. Sept. 23, 2019); *2711 Hollywood Beach Condo. Ass'n v. TRG Holiday, Ltd.*, 307 So. 3d 869, 870-71 (Fla. Dist. Ct. App. 2020).

harms or destroys the finished product."); *Casa*, 620 So. 2d at 1247; *Jarmco*, 668 So. 2d at 302-04; *Am. Universal*, 578 So. 2d at 453-54.[5]

Likewise, any claims as they relate to the Sprayer fail too. Dero used the Sprayer to apply the products to the roofs. In doing so, the Sprayer apparently did not perform as intended. Regardless, there is no allegation of damage to other property as it relates to the Sprayer. The products went through the Sprayer onto the roof for the purpose of weatherproofing the structure. None of that could be interpreted as separate property for the purpose of the economic loss doctrine. *See Fla. Power & Light Co. v. Westinghouse Elec. Corp.*, 510 So. 2d 899, 901-02 (Fla. 1987) (adopting rationale that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself" (quoting *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986)).

---

[5] Although limited claims about TritoCryl may proceed (as explained below), any TritoCryl damage to the roof is unrecoverable. Conceptually, the Court thinks of TritoCryl as like paint. Economic loss paint cases explain that failure of such products does not damage other property when it merely fails to work, resulting in cleanup or replacement costs. *Chevron USA, Inc. v. Aker Maritime, Inc.*, 604 F.3d 888, 900 n.11 (5th Cir. 2010); *Dannic Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 910 (8th Cir. 2013).

The remaining claims (Counts 1, 2, and 4) are for products liability.[6] Dero alleges damage to the product (i.e., the roof) and potentially other property (addressed below). When—as here—plaintiff seeks to recover damage to the product itself and other property, courts must take care to distinguish the items. A "tort plaintiff cannot recover for the physical damage the defective product causes to the 'product itself'; but the plaintiff can recover for physical damage the product causes to 'other property.'" *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 877 (1997). Instead of suing in tort, plaintiff's recovery for damage to the product would be proper under a contract or warranty theory. *See Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 540 (Fla. 2004) (If "the damage is to the product itself, the injury suffered—the failure of the product to function properly—is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain." (cleaned up)). So even "when there is damage to other property, recovery for the loss to the product itself is still in contract and not tort." *Boracayan del Sur, S.A. v. Vidco Indus., Inc.*, No. 05-21948-CIV-

---

[6] Dero tries to differentiate Count 4 from the others because it is titled "Negligence." (Doc. 67 at 18). This is a distinction without a difference. Count 4 alleges various products liability theories of negligence (e.g., negligent design, manufacture, and warning).

JORDAN, 2007 WL 9700684, at *3 (S.D. Fla. Mar. 22, 2007).[7]  It is essential, therefore, to draw a line between the roof and any other property.

To sum up, all damage to the roof is barred by the economic loss doctrine. And any injury related to TritoFlex or the Sprayer are barred by the same logic. For TritoCryl though, Dero plausibly alleged limited damages to other property that might not be prohibited.  So the case may proceed as to those narrow issues.  Here's why.

This case is still at the pleading stage (when the Court must accept well-pled allegations as true and view them most favorably to Dero).  *Almanza*, 851 F.3d at 1066.  In part, Dero alleges the Condos suffered damage to their screens.  As the Court understands it, TritoCryl oozed below the roof onto either the window or lanai screens—damaging those screens and potentially whatever was beneath or inside them.  There are no allegations to suggest the screens were anything but other property for the purposes of the economic loss rule.  Specifically, nothing implies the screens were connected in any manner

---

[7] *See also Comptech Int'l, Inc. v. Milam Comm. Park, Ltd.*, 753 So. 2d 1219, 1225-27 (Fla. 1999) (distinguishing between product and other property to allow recovery for damage to other property); *Masforce Eur., BVBA v. Mastry Marine & Indus. Design, Inc.*, No. 8:11-CV-1814-T-24AEP, 2013 WL 12156533, at *15-17 (M.D. Fla. Oct. 24, 2013); *Progressive N. Ins. v. Therm Tech. Corp.*, No. 8:06-cv-1252-T-30MSS, 2007 WL 4557206, at *3-4 (M.D. Fla. Dec. 21, 2007); *St. Paul Fire and Marine Ins. v. Lago Canyon, Inc.*, No. 06-60889-CIV-COHN/SNOW, 2007 WL 397047, at *2-3 (S.D. Fla. Feb. 1, 2007); *City of St. Petersburg v. Total Containment, Inc.*, No. 06-20953-CIV-LENARD/TORRES, 2008 WL 11403220, at *13-14 (S.D. Fla. Oct. 9, 2008), *report and recommendation adopted by*, 2008 WL 5428172 (Dec. 30, 2008).

to the roofs or their repairs. So at this time, Dero plausibly alleged damage to other property of "the exterior and interior of the buildings, including penetration of the residents' screens, gutters, and other related areas." (Doc. 67 at 5).

To be sure, the damage as it relates to the gutters plus "exterior and interior of the buildings" (which the Court assumes could mean fascias, soffits, and walls) is a much closer call than the screens. (Doc. 67 at 5). While it leaves final resolution for another day, the Court notes an inclination to conclude this is not other property. Gutters, fascias, and soffits may be part of a complete roof (i.e., what the Condos bargained for). What's more, the wall immediately adjoining the roof beneath a soffit would seem intimately connected with the roof. So the economic loss rule might eventually bar these types of damages too. But there is no need to step out on a limb over these matters today given the impossibility of concluding the screens weren't other property on these allegations.

One final point. Even for the screens, ownership of that property might doom Dero's claims. In Florida, it is settled that plaintiff must own the "other property." *E.g.*, *Pycsa*, 625 F. Supp. 2d at 1247-48. Again, the Complaint does not clarify who owns the screens. If individual residents are the property owners, then Dero (through the Condos) cannot claim that as damage to other

13

property. But that is a factual issue well outside the pleadings to resolve at a later stage.

So the case will proceed—albeit much skinnier—on Counts 1, 2, and 4 as they pertain to TritoCryl damaging other property.

**E. Amendment**

Finally, the Court addresses Dero's perfunctory request to amend. The Court denies it for several reasons.

First, the request is procedurally flawed. Dero asked to amend within briefing. Parties seeking leave to amend must do so by separate motion. Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); *Long v. Satz,* 181 F.3d 1275, 1279 (11th Cir. 1999). Besides that procedural hiccup, there are substantive grounds to refuse another amendment.

Dero had several chances to amend the pleadings, including amendment after a Court ruling on dispositive motions. By this point, the Court gave Dero more than enough opportunity to fix the pleading issues. And it need not allow more time to state the claims. *E.g., Mandala v. Tire Stickers, LLC,* 829 F. App'x 896, 903 (11th Cir. 2020) ("A district court need not allow an amendment where there has been repeated failure to cure deficiencies by amendments previously allowed." (cleaned up)).

Buttressing this conclusion is the complete failure to explain how amendment could even state a claim. Dero offers an empty-handed sentence

14

that it would like another chance to amend. In doing so, it does not "set forth the substance of the proposed amendment." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1362 (11th Cir. 2006). Rather, Dero again promises it can explain the theories without disclosing what they might be. That request falls short.

Even leaving this aside, Dero's request comes too late. The deadline to amend pleadings long since passed. (Doc. 66). When leave to amend is sought "after the scheduling order's deadline," plaintiff "must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Id.* Dero's unexplained failure to make timely, sufficient allegations is not diligence.

What's more, if the more lenient Rule 15(a) standard applied, Dero's request would be undue delay and likely prejudicial. *See Blackburn v. Shire US Inc.*, No. 20-12258, 2021 WL 5563732, at *4-5 (11th Cir. Nov. 29, 2021). There is no indication of new facts Dero could not have alleged months ago to support its theories. Nor is there any excuse for why necessary allegations would be withheld. *See Tampa Bay Water v. HDR Eng'g*, 731 F.3d 1171, 1186 (11th Cir. 2013) ("A district court may find undue delay when the movant knew of facts supporting the new claim long before the movant requested leave to

15

amend, and amendment would further delay the proceedings. . . . [P]rejudice is especially likely to exist if the amendment involves new theories of recovery or would require additional discovery."), *abrogated on other grounds by CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333 (11th Cir. 2017). This is a one-year-old case still at the pleading stage. So much time and expense has already been invested in the pleadings that the Court does not believe another amendment is appropriate.

While Plaintiff does not have leave to add anything to the pleadings, this Order dismisses most of its theories. So the Court directs Plaintiff to file an amended complaint removing those claims and theories dismissed by this Order—without adding or realleging any theories or claims already dismissed.

Accordingly, it is now

**ORDERED:**

1. Defendants Motions to Dismiss Plaintiff's Fourth Amended Complaint and (Docs. 68; 69) are **GRANTED and DENIED in part**.

    a. Counts 3 and 5 are **DISMISSED with prejudice**.

    b. Counts 1, 2, and 4 are **DISMISSED with prejudice** to the extent that they relate to TritoFlex, the Sprayer, and any damage to the roof.

    c. In all other respects, the Motions are **DENIED**.

2. Plaintiff must **FILE** an amended complaint—in accordance with this Order—**on or before November 8, 2022**.

**DONE** and **ORDERED** in Fort Myers, Florida on October 24, 2022.

*[signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record