UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DERO ROOFING, LLC,

    Plaintiff,

v.                                     Case No.: 2:21-cv-688-SPC-KCD

TRITON, INC. and BASF
CORPORATION,

    Defendants.
                                        /

## OPINION AND ORDER[1]

Before the Court is Defendant BASF Corporation's ("BASF") Motion to Dismiss (Doc. 79), Plaintiff Dero Roofing, LLC's ("Dero") response in opposition (Doc. 84), and Defendant Triton, Inc.'s ("Triton") Motion for Joinder (Doc. 80). The Court grants Triton's Motion for Joinder and partly grants BASF's Motion to Dismiss.

## BACKGROUND

This is a products liability case that has been pending for over a year yet is still in the pleadings stage. The current operative pleading is Dero's Fifth Amended Complaint. (Doc. 78). Dero is a contractor that repaired hurricane

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them. The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

damage to two condominium buildings, Casa de Marco and Huron Cove ("the condominium associations").  Defendants manufactured and distributed TritoCryl, TritoFlex, (collectively, the "Products") and a Sprayer for the application of the Products, all used by Dero in the repair of the condominiums. The Products, when applied by Dero with the Sprayer, did not perform well and streaked down the roof tiles onto other parts of the condominium buildings.[2]

The condominium associations assigned Dero their legal claims against Triton concerning the Products.  By the plain language of these assignments, they only cover claims against Triton, not BASF.  There is no evidence that any individual condominium unit owners assigned their claims against either Defendant to the condominium associations.

In this sixth iteration of the Complaint, Dero asserts strict liability claims against both Defendants and a negligence claim solely against Triton. (Doc. 78).  For the reasons stated below, this Court grants the motion to dismiss as to BASF, but denies the motion to dismiss as to Triton, Inc.

---

[2] The complaint is ambiguous as to what parts of the properties the Products damaged.  The complaint includes vague allegations such as "product had begun streaking down the red tile roofing system and down the exterior and interior of the buildings, including penetration of the residents' screens, gutters, and related areas," and "damages extend to . . . other surrounding areas of the property." (Doc. 78 at n.1, 4, 6, 8).  The complaint makes ambiguous, repeated, and unhelpful references to "catastrophic failure" and "extreme chemical penetration."  (Doc. 78 at 6, 8, 9).

**LEGAL STANDARD**

A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A facially plausible claim allows a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At this stage, courts usually don't consider matters outside the four corners of the complaint and its exhibits. *Allen v. USAA Cas. Ins.*, 790 F.3d 1274, 1278 (11th Cir. 2015). Courts accept all well-pled allegations as true and view them most favorably to the plaintiff. *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017).

"When standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint and . . . construe the complaint in favor of the complaining party." *Pennell v. San Jose*, 485 U.S. 1, 7 (1988) (citing *Warth v. Seldin,* 422 U.S. 490, 501 (1975); *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 109 (1979)) (internal quotations omitted). Standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife,* 504

3

U.S. 555, 561 (1992) (internal citations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing because "on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889 (1990)).

## DISCUSSION

Before discussing the Motion to Dismiss, the Court briefly addresses Triton's Motion to Join BASF's Motion to Dismiss. (Doc. 80). A party is generally free to join in another party's pending motion unless the joinder would adversely affect the administration of the case. *See Fisher v. Off. of State Atty. 13th Jud. Cir. Fla.,* 162 Fed. App'x 937, 942 (11th Cir. 2006). Triton's Motion was timely filed before resolution of the Motion to Dismiss. Dero does not oppose the Motion to Join in its Response, and therefore the Court considers it unopposed.[3] As a result, Triton's Motion to Join (Doc. 80) is granted.

The Court now turns to the substance of BASF's Motion to Dismiss. (Doc. 79). BASF asserts three main arguments: (1) Dero cannot bring claims against

---

[3] Dero's only mention of the Motion to Join is its argument that "Triton, Inc. only joined BASF in its Motion to Dismiss, which did not plead defenses on behalf of Triton, Inc. for negligence, [so] the Court should accept the Negligence count as plausible and compliant absent objection." (Doc. 84 at 4).

4

BASF based on the plain language of the assignment of claims; (2) Dero lacks standing; and (3) Dero's claims fail under the economic loss rule. Triton joins the second and third arguments.

Before addressing these arguments, it is important to note that standing in this case is really a two-part analysis: (1) Has Dero adequately pled that the condominium associations have standing to assert claims against Defendants? and (2) If Dero has pled standing, have the condominium associations properly assigned their rights to sue to Dero?

The Court begins with the question of whether the condominium associations have standing to assert claims against Defendants. There are three methods by which the condominium associations could have standing to sue over the damaged property: (1) the condominium associations own the damaged property; (2) under Fla. Stat. § 718.111 the damaged area was of common interest to all or most unit owners; or (3) the individual owners of the units have exclusive right to sue, but assigned their own claims to the condominium associations. There are no facts before this Court that support this last possibility, so if the damage was done to a portion of the property that is exclusively owned by the unit owners and is not of common interest, then only the owners—not Dero—have standing to bring this action.

5

### A. Standing, Both Under Fla. Stat. § 718.111 and Otherwise[4]

To begin, the Court emphasizes that where we are right now stems from careless pleading. Defendants argue that Dero lacks standing because Dero has not specifically pled that it owns the damaged property or pled that individual owners of the damaged property assigned their right to sue to Dero. This means (according to Defendants) that Dero only has standing to bring claims under § 718.111—claims of "common interest to most or all unit owners." But Dero has not pled that the damaged property is of "common interest to most or all unit owners." (Doc. 79 at 9-11). Defendants' argument is not without merit, because there are two important areas Dero sorely neglected in its Complaint: (1) what areas of the building were damaged and (2) who owns that damaged property.

But while the Court does not wish to reward sloppy pleading, this is the motion to dismiss stage. *See Bell v. Miedema*, No. 3:20-cv-294-J-32MCR, 2020 WL 5230581, at *1 (M.D. Fla. Sept. 2, 2020) ("At the motion to dismiss stage, courts must evaluate standing based on the facts alleged in the complaint, and a party's burden is satisfied if it has alleged facts that plausibly establish

---

[4] The Court addresses ownership now because this is the first time Defendants have raised a standing argument. In a prior Order (Doc. 76), the Court stated that ownership of the damaged property was more properly a factual issue "well outside the pleadings." Now that Defendants have raised this issue, it is no longer "well outside the pleadings."

standing"). And the Court finds that Dero has alleged standing sufficient to survive the motion to dismiss stage.

Fla. Stat. § 718.111(3)(b)(1) gives condominiums a right to assert a cause of action on behalf of individual condominium owners "concerning matters of common interest to most or all unit owners." These "matters of common interest" include "the common elements; the roof and structural components of a building or other improvements; mechanical, electrical, and plumbing elements serving an improvement or a building; and representations of the developer pertaining to any existing or proposed commonly used facilities." Fla. Stat. § 718.111(3)(b)(1). Defendants argue that this statute is the only way that Dero can have standing.

But because Dero has pled that it is the "owner of property damaged by Tritocryl," the Court finds that Dero may have standing independent of Fla. Stat. § 718.111. At the motion to dismiss stage when the Court must take the facts in the light most favorable to Dero, the Court finds that paragraphs eight and nine of the Fifth Amended Complaint allow Dero to squeak through:

8. Casa de Marco is . . . the owner of property damaged by Tritocryl.

9. Huron Cove is . . . another owner of property damaged by Tritocryl.

(Doc. 78 at 3).

Defendants may ultimately be correct that Dero's only standing comes from Fla. Stat. § 718.111, but reading the complaint in the required light most

favorable to Dero, Dero has pled that the condominium associations own the damaged property.

Even if Dero only has standing under Fla. Stat. § 718.111, it still passes the motion to dismiss standard. Dero asserts standing under Fla. Stat. § 718.111(3)(b)(1) because "the TritoCryl topcoat white acrylic product had begun streaking down the red tile roofing system and down the exterior and interior of the buildings, including penetration of the residents' screens, gutters, and other related areas." (Doc. 78 at n.1). This description does not explicitly tell the Court if the damage was to areas of common interest to most or all unit owners. *See* Voeller Const., Inc. v. Southern-Owners Ins. Co., No. 8:13–cv–3169–T–30MAP, 2015 WL 1169420, at *3 (M.D. Fla. Mar. 13, 2015) (noting that the seawall, structural components, and electrical, plumbing, and heating within the condo are matters of common interest to unit owners). The Court is left to speculate about several facts, including the size of the condominiums, the number of unit owners, and the size and location of the impacted area. But in the light most favorable to Dero, the "exterior . . . of the buildings" and "the residents' screens [and] gutters" could constitute areas of "common interest" under Fla. Stat. § 718.111, regardless of whether Dero pled as much with specificity.

In sum, the condominium associations own at least some of the property damaged by Tritocryl. They have also asserted standing regarding "common

interest" damaged property under Fla. Stat. 718.111. Considering these facts and the ambiguity about the parameters of the property damage, the Court finds a final determination on this issue is best left for the summary judgment stage. *See Royn Cos. v. S. Plate Glass*, No. 6:13-cv-358Orl-22TBS, 2014 WL 12610863, at *2 (M.D. Fla. Apr. 14, 2014) (declining to decide on a motion to dismiss whether the subject of litigation—a glass curtain wall—was a "product" because "there are significant factual issues that preclude the Court from deciding this issue on a motion to dismiss—namely, the lack of any reliable factual information about the curtain wall itself").

But if this case reaches the summary judgment stage without clarification as to what property was damaged, who owned that property, and whether the damaged property falls within the definition of "common interest" property under Fla. Stat. § 718.111(3)(b)(1), Dero may face perilous waters. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) (contrasting asserting standing at the pleading stage and at the summary judgement stage). Throughout its response, Dero uses terms such as "obviously" and "clearly" to describe how it has standing to sue. But Dero's allegations are neither obvious nor clear, and the complaint is only proceeding because of the standard under which it is now being assessed.

9

### B. The Economic Loss Rule

For similar reasons, the Fifth Amended Complaint also survives Defendants' economic loss rule argument. The economic loss rule prohibits recovery for purely economic losses under tort theories of liability. *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, No. 89-788-CIV-T-17A, 1992 LEXIS 19441, at *10 (M.D Fla. Mar. 11, 1992) (citing *Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc.*, 588 So. 2d 631, 633 (Fla. Dist. Ct. App. 1991)). At its simplest level, the economic loss rule holds that when an action is properly brought in contract, it should not be brought in tort. *Tindle Enters. v. Plastic Trends, Inc.*, No. 3:09cv86/RV/EMT, 2009 WL 1659375, at *2 (N.D. Fla. Jun. 11, 2009). The rule states that when only "economic losses" have been incurred, any claim for damages should be grounded in contract or warranty. *Id.* Economic loss consists of "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Tiara Condo. Ass'n v. Marsh & McLennon Cos.,* 110 So. 3d 399, 401 (Fla. 2013) (citing *Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1246 (Fla. 2013)).

The economic loss rule thus separates property into two broad categories: (1) the defective product itself and (2) other property. If the defective product is the only thing damaged (which is to say the product only damaged itself),

10

the loss incurred is economic and contract law is the appropriate vehicle to secure damages. But if the defective product damages "other property," then a claim may be brought in tort. The line between what is part of the product itself and what is "other property" is not always clear. *Vogelgesang v. Dynamax Corp.*, No. 11-CA-002631, 2013 Fla. LEXIS 10372, at *7-8 (Fla. Cir. Ct. Oct. 21, 2013) (collecting cases).

Defendants argue that survival of a tort claim under the economic loss rule *also* requires Dero to own the "other property." This argument is not without merit. Several jurisdictions have hinted that for a plaintiff's tort claim to survive the economic loss rule, the claim must concern "other property" that is owned by the plaintiff. *See, e.g., Airport Rent-A-Car v. Prevost Car*, 18 F.3d 1555, 1556 (11th Cir. 1994) (referencing the lower court's decision that there was no "other property" at issue because the plaintiff "did not assert an ownership interest in the property belonging to the passengers [of the destroyed vehicle]"), *aff'd*, 67 F.3d 901 (11th Cir. 1995); *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, No. 89-788-CIV-T-17A, 1992 LEXIS 19441, at *12 (M.D Fla. Mar. 11, 1992) (the plaintiff builder "cannot be said to have suffered damage to its property" because the builder "no longer owns the damaged units in question"); *Pycsa Pan., S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1247 (S.D. Fla. 2008) (citing *Pulte Home Corp.* for the proposition that "[i]n Florida, a pre-requisite to claiming damage to other

11

property is that the plaintiff must be the owner of the other damaged property"); *Tindle Enters. v. Plastic Trends, Inc.*, No. 3:09cv86/RV/EMT, 2009 WL 1659375, at *2 (N.D. Fla. Jun. 11, 2009) (rejecting plaintiff's tort claim in part because "plaintiff does not allege that it owned this 'other property'").[5] The ownership "requirement" has also been perpetuated by the Third Restatement: "For purposes of this Restatement, harm to persons or property includes economic loss if caused by . . . (c) the *plaintiff's property* other than the defective product itself." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 21 (AM. L. INST. 1998) (emphasis added).

The Court finds that Dero—despite not clearly alleging that it owns the "other property"—has alleged standing sufficient to survive the motion to dismiss stage. Dero does not expressly allege that it (by assignment) owns the buildings or specific areas of the building that Tritocryl has damaged. But at the motion to dismiss stage when the Court must take the facts in the light most favorable to Dero, the Court finds that paragraphs eight and nine of the

---

[5] *See also Whitecap Inv. Corp. v. Putnam Lumber & Exp. Co.*, No. 2010-139, 2013 WL 1155241, at *4 (D.V.I. Mar. 21, 2013) (discussing the necessity plaintiff's ownership of the "other property" and citing cases from federal district courts in Maine, New Jersey, and Illinois); *Marsulex Envtl. Techs. v. Selip S.P.A.*, 247 F. Supp. 3d 504, 517-18 (M.D. Pa. 2017) (collecting cases from federal district courts in New Jersey, South Carolina, and Colorado—as well as from the Fifth Circuit—for the proposition that plaintiffs must own the "other property" at issue); *Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.,* 843 F. Supp. 1027, 1055 (D.S.C. 1993) (finding plaintiff's claim was barred by the economic loss rule because "[i]n all of the above precedents, the plaintiff owned the other property that was injured by the defective product. Such is not the case here" and collecting cases for the proposition that the plaintiff must own the "other property").

12

Fifth Amended Complaint—when coupled with Fla. Stat. § 718.111—again allows Dero to squeak through.

Paragraphs eight and nine allege that Dero (through assignment) owns "property damaged by Tritocryl." (Doc. 78 at 3). This Court, at this stage, is willing to assume that some of this "property damaged by Tritocryl" constitutes "other property." And even if Dero asserts standing only through Fla. Stat. § 718.111, the Court is not convinced that "ownership" is required if Dero otherwise has standing as to the "other property" (as it may under Flat. Stat. § 718.111). Other courts may have inexactly used "ownership" in the context of the economic loss rule in place of the word "standing."[6] But even though ownership is generally sufficient for standing, it is not necessary for standing.

But before Dero celebrates, the Court cautions Dero that if it only has standing under Fla. Stat. § 718.111, then its claims are limited to the extent—

---

[6] Even some of the case law that commands "ownership" hints that ownership is a "requirement" only because it establishes standing. See *Pycsa Pan., S.A. v. Tensar Earth Techs., Inc.,* 625 F. Supp. 2d 1198, 1247 (S.D. Fla. 2008) ("This requirement [of ownership] is consistent with the general rule that a party only has standing to bring a claim when it has personally suffered an injury. If the other damaged property is not owned by the Plaintiff, the party has not suffered an injury"); *Marsulex Envtl. Techs. v. Selip S.P.A.,* 247 F. Supp. 3d 504, 517 (M.D. Pa. 2017) ("recogniz[ing] the general rule that few plaintiffs would have standing to bring a claim for property damages on behalf of another"); *Naporano Iron & Metal Co. v. Am. Crane Co.,* 79 F. Supp. 2d 494, 504-505 (D.N.J. 1999) ("There are few precedents . . . addressing whether a party may assert a products liability claim for third-party damage that accompanies injury to the defective product itself. This dearth of case law likely reflects the fact that few plaintiffs would have standing to assert a claim for damages to the property of another").

if at all—"areas of common interest" under Fla. Stat. § 718.111 overlap with "other property" under the economic loss rule.

### C. Standing Via a Valid Assignment: BASF

Next, BASF argues that the assignments do not grant Dero the right to bring an action against BASF, only against Triton. BASF bases this argument on the assignment documents, which do not address BASF at all—only Triton. In response, Dero asserts it is entitled to bring any action related to damage caused by Tritocryl based on the language in the assignment. The Eleventh Circuit has made clear that "[a] district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami,* 811 F.3d 1271, 1277 (11th Cir. 2016). Here, Dero attaches the two assignments to its Complaint (one for each condominium association). But these assignments specifically state:

> all of Assignor's rights, title, and interest to any lawful claim and/or litigation proceeds resulting from any property loss that Assignor may have related but not limited to any right, title, and interest regarding a legal claim against **Triton, Inc.** (Legal Entity: 0001-5020-6987) for damages to properties owned by Casa De Marco Condominiums caused by **Triton, Inc**.[7]

---

[7] The assignments are nearly identical; they only differ based on the condominium association's name.

14

(Doc. 78-1 at 2) (emphasis added).  Although Dero asserts it is entitled to bring this action against BASF, the assignments only mention Triton, not BASF. Accordingly, even if the assignments are valid and Dero would otherwise have standing to sue, the assignments still do not give Dero standing to sue BASF.

Accordingly, it is now **ORDERED:**

1. Defendant Triton, Inc.'s Motion for Joinder (Doc. 80) is **GRANTED.**

2. Defendant BASF Corporation's Motion to Dismiss the Fifth Amended Complaint (Doc. 79) is **GRANTED in part and DENIED in part.** The Motion is granted to the extent that Defendant BASF Corporation is dismissed from this action but is denied in all other respects.

3. Defendant Tritan is **DIRECTED** to file an answer on or before **February 21, 2023**.

4. The Clerk is **DIRECTED** to enter judgment as to **Defendant BASF Corporation only.** This action remains open as to Defendant Triton.

**DONE** and **ORDERED** in Fort Myers, Florida on February 6, 2023.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record